Good morning, Your Honors. Thank you. Janet Tung, Federal Defenders of San Diego, on behalf of Christopher Jones. I'll try to keep my eye on the clock to reserve a couple minutes. Great. Thank you. There's only one issue in this appeal today, and it concerns the second prong of the Biltz v. Clark equitable tolling test. And the Biltz test, of course, is a two-prong test, where the first prong looks at the habeas petitioner and asks if he had a mental impairment that was so severe it prevented him from filing a timely federal petition. And the second prong, of course, asks if he was diligent, if he, in fact, had this mental impairment, if he was diligent in seeking assistance of others or finding some other means of having his federal petition filed. And we are in the posture today where diligence, the second prong, is the only prong we're looking at because the first prong has already been established. The district court has found that Mr. Jones has severe mental impairments and that he is personally incapable of filing a habeas petition on his own. And that's based on an undisputed factual basis. Mr. Jones is a person who has an IQ of 57, and that's below 99.8 percent of the population. I think everybody agrees he's got serious problems. The magistrate judge found significant that, despite these problems, he was able to file a state habeas, he was able to file grievances and other things. What's your answer to that? Thank you, Judge Silverman. That's correct. The magistrate and then later the district court found that that was a very important aspect of the case, and they relied mostly on the fact that he had state habeas petitions and 602 filings. And I do think you're right. I should focus on those. The state habeas petitions in particular, there were four such filings in the course of the 16 years or so that he was in custody before his federal petition was filed. And they consisted of filings in the superior court and then later the appellate court and then later the Supreme Court, and then one just a few months before his federal petition was filed again in the superior court, all of which were dismissed out of hand by the state courts. Now, these petitions came about, I think it's very important how these petitions came about. And they came about because through the inmates who helped him actually tell us in the, in the excerpt of the record how he was able to have these petitions filed on his behalf. And the first one that we know about is Leon Davis. And he tells us on, I think it's ER 197, 198, that he and Mr. Jones were cellmates. And it was Leon Davis who initiated asking Mr. Jones about his case because Mr. Jones never understood what was happening with his case. And Leon Davis could tell this from knowing him as his cellmate. And he was the one who asked Mr. Jones what was going on. He says Mr. Jones was not able to participate or communicate effectively about his case. And Leon Davis says, I learned what I needed to know by looking through the paperwork myself. The extent of Mr. Jones' help was simply handing me his paperwork. And I'm going through this because I think it's critical to the legal status of the case. Theodosia Golden, later on ER 205, another person who helps him with the petition, has a less detailed account, but it's consistent. And if we look all the way towards the end to the person who helped him prepare his Federal petition, Joseph Gallardo in 2009, he tells almost the same type of story. And he says on ER 207, he explains that he was in the prison law library and he notices a black man sitting around looking confused and frustrated and going around in circles. And this turns out to be Mr. Jones. Now, Mr. Gallardo is the one who initiates. He asks him what he's doing. And Mr. Jones had documents in his hands, and it appeared as though he didn't know what to do with the papers. So they talk a little bit, and Gallardo finds out that the papers are a habeas petition to be filed in state court. He asks him, why are you still in state court after all these years? And Mr. Jones, this is Mr. Gallardo saying, did not appear to understand. He received assistance from other inmates, and he was trying to do what he was told. Later on, he decides to help him, and what happens is he finds out that Mr. Jones doesn't understand the differences between state and Federal court. He just doesn't know. He's not just doesn't understand it. He is incapable of grasping these distinctions, and he doesn't know what a deadline is. He doesn't understand that the fact for filing a deadline has passed. And, again, it's not just that he's ignorant of it. It's that he's incapable of understanding it. So Mr. Gallardo takes the papers from him and just does everything himself. And he says, I prepared Mr. Jones's petition without the assistance of Mr. Jones. And that goes directly to the bills versus the aspect of the Bills v. Clark test that the district court failed to do. And that's Bills v. Clark says, very specifically, I'll point out to two key portions of Bills on pages 1100 and 1101, where Bills says, when considering diligence, that the court has to, the district court has to look at the petitioner's mental impairment as it applies to, and this is a quote, the ability to cooperate with or monitor assistance the petitioner does secure. In other words, Bills acknowledges that a habeas petitioner in this position is quite possibly going to find somebody to help him. But that's just the beginning of the test, the fact that he has somebody to help him. May I ask you this? The magistrate judge in the district court judge's approval of his findings indicates that, to me, that the prior state filings show an ability by Jones to make filings. That's a finding of fact. What is our scope of review as to that finding of fact? To the extent that it's a finding of fact as to just a very generalized ability, if one were to look at that as a finding of fact, we do not disagree with that. That Mr. Jones' finding of fact. May I ask my question again? If it is a pure finding of fact, the scope of review would be a clear error. Now, that is not the portion of the decision that we disagree with. We believe, and Bills says this, that the district court must look beyond just the mere fact of ability. Bills says that the court should examine whether the petitioner's mental impairment prevented him from, and then dot, dot, dot, communicating or sufficiently supervising any assistance actually found. So we agree that assistance has been found. We are saying that the court should have and did not look at what effect the specific mental impairments Mr. Jones had. What effect those had on his ability to monitor. Well, it looked at the result of the mental impairment, which was that he filed three or four prior state habeas proceedings and some 602 grievances. So he was able, from that, the deduction ensued that he was able to seek assistance. And if he was able to seek assistance and so was so found by the district court and we're reviewing for clear error, can we say that this was an abuse of discretion as to fact finding? I disagree that we are reviewing for clear error. I agree. I thought you just told me that. Because I think we don't necessarily see eye to eye on what is being reviewed. Okay. I agree that he was assisted in the sense that that counts as an ability. Oh, you say he was assisted, but that doesn't show that he was able to get assistance. Well, what we are, he was able in the sense that assistance was offered to him. And, again, I would refer Your Honors to page 198 of the excerpts of record, 205 and 207, that show exactly how that assistance came about, is typically the other inmates took pity on this individual and said, give me your papers, I will help you. If we look at the 602 petitions, the prison complaint forms, we'll see that the majority of those complaint forms are actually group complaint forms. So there was complaints where in one, for example, the entire black inmate population of Facility D felt they were discriminated against. So we have 50 or so inmates sign on. So there's these group petitions, which we see is not a case of Mr. Jones thinking to himself, gee, I feel discriminated against. This seems like a cause of action. I'm going to go out and find assistance. It's he is along for the ride. It's simply circumstances, an aleatory situation where he happened to get assistance doesn't show that he was able to request assistance. That is part of my position. But also importantly, my position is that he was incapable of supervising, monitoring, and cooperating with the assistance in such a way that Bill's asked. I think, Judge Bea, if I may make a point that I'm not sure that my briefs adequately bring out. In Bill's, if it were the case that a habeas petitioner, like Mr. Jones, is necessarily not diligent simply because he had state petitions filed on his behalf or he had assistance available in this sense, then Bill's itself would have come out the other way. Bill's itself contemplates the situation and it forecloses it. And it's actually a little bit later on, it's on page 1101 in Bill's, where in Bill's the magistrate court, the magistrate judge relied on the, I'm quoting from Bill's, relied on the availability of a jailhouse lawyer to show Bill's was not entitled to equitable tolling since he had the assistance in preparing legal materials during limitations period. That is exactly what we are talking about here. And Bill's says that is the beginning of the inquiry. We need to look at the ability due to the mental impairment or modified by the mental impairment, limited by the mental impairment, his ability to monitor or supervise that assistance. Thank you, Ms. Tung. Good morning. May it please the Court. I am Kevin Viena, California Deputy Attorney General, on behalf of Respondent in this matter. The district court paid very careful attention to this case and recognized that it was not easy because even after Bill's, the application of the standard for equitable tolling for mental impairment doesn't draw clear lines and maybe it's not capable of drawing clear lines. District court described the decision in this case as particularly difficult in light of the record. Let me stop you there. He has a, he says it's a difficult case and it is a difficult case. The district court dealt with this in September of 2013. And then in March 2014, there's a new case that comes out called Forbus. Why shouldn't we ask the district court that recognizes this as a close case to go back and reconsider it in light of Forbus? Maybe he'll come out the same. Maybe he won't. But he now will have the benefit of the new precedent. My brief referred both to Forbus and to a case that followed after Forbus, Yao. And I think the reason not to send it back is because in the end, Forbus and Yao strongly support the district court's determination. Forbus, illustratively, as the court said in Yao, showed how severe a mental impairment has to be. And in Forbus, Mr. Forbus' mental impairment was so severe that he didn't even know he was in prison. Well, he may have known he was in prison. As far as the severity, Jules has already passed that test, according to the magistrate judge. There's no question he has a severe mental impairment. Right, but the question is how severe it is and how that affects his ability to seek assistance and obtain assistance and file. And the significance of Forbus is that his impairment made it such that he would not even know of the need to seek assistance because he thought he was essentially in a witness protection plan. Mr. Jones' impairment is a great deal short of that. That is, the record shows that, well, the record shows clearly that he did seek relief on a number of occasions between 2003 and 2006. His tongue makes the point that the assistance sort of came to him. He didn't seek it out. She points to at least two people who provided him assistance who suggested that maybe it came to him. And I wouldn't suggest that that's not important, but there were other folks who provided him assistance over the years. And by my count, Roberts, Gallardo, Jones, Davis, and an unnamed Cuban. So he regularly was able to find assistance either to assist in this processing of 602s or to file habeas corpus petitions. The question here is whether the assistance found him or he found the assistance. I mean, if you take Gallardo's recollection of the events, he has Jones walking around in circles with a bunch of papers in his hand and not knowing what's going on. And like a good Samaritan, Gallardo goes and helps him. That doesn't show me anyway, if that relation is complete, that Mr. Jones has the ability to seek out Gallardo. What the inference, that seems correct. That is, if Mr. Jones sat in a corner and was unable to do anything and someone just walked over and picked up his papers and said, I wonder if I should file a habeas corpus petition for him, we would agree that that level of incompetence would warrant equitable tolling. But Jones doesn't show that level of incompetence over the period of time. Mr. Feeney, could you concentrate on the procedural question I asked Ms. Tong, which is if there is a finding by the district court that Mr. Jones had the ability to seek assistance and we're reviewing for clear error, don't we have to grant deference to that district court finding? I think so, Your Honor. Actually, I spent a good deal of time in our brief on the standard of review, addressing the difficulty of the standard and what is factual and what is not factual. But certainly ability seems to be factual. Based on that, can you tell me what evidence there is in the record to sustain a finding by the district court that actually Jones sought assistance from anyone, Gallardo or the Pryors? I think it comes largely from the fact that he received assistance and one other thing. That is, he related in the course of assistance information that seems to have been available only to him. One of the claims that he continues to press is that he received ineffective assistance of counsel at trial because his counsel failed to present a voluntary intoxication defense. Those folks who may have been assisting him, Gallardo and Jones, for example, who may have taken the initiative to say, can I give you some help, could not or it seems could not have done that or could not have included that without his cooperation and without his information and without his competent recollection of the events that preceded the crime. So this circumstance is a good deal different from someone who sits in a corner, unable to seek or engage individuals who are assisting him. The fact, for example, that he's walking around in the library and seems confused, I would say that might apply to me on occasion. But habeas corpus is difficult. The fact that on a number of occasions he doesn't understand habeas corpus or legal terms does not show that he's unable to recognize that he's in prison, he doesn't want to be there, and he thinks there's a basis for his relief. And part of that basis, the ineffective assistance of counsel claim, relies on his memory, understanding, and recognition that he thinks something went wrong. Okay. Beyond that, we think that I just, YOW, I think, largely helps our position. I was looking yesterday at citations to YOW, and there are several in the district courts. I can provide those to the court if you would like. Let's say that the ability to file multiple claims provides an inference of ability. That inference of ability was drawn by the district court in this case, and that doesn't seem to be an abuse of discretion. It doesn't seem to be clear error. If there are no other questions. I guess not. Mr. Vianna, thank you. Thank you, Your Honor.  What does YOW do for you? I think Judge Silverman, excuse me, I think you're correct that YOW is inapposite for the purpose because that, because in YOW, the major distinction between that case and this case is that we don't have a showing in YOW of his mental incapacity of preparing a Federal petition. Now, the only additional point. Mr. Vianna cited the holding of YOW to be the actual filing of several claims indicates the ability to seek aid in filing claims. In YOW, the petitioner there had actually, he was complaining that he had a language barrier. There are the instances that are cited to in that opinion that show he had access to ability, or I'm sorry, to assistance, showed that he had access to surmount that language barrier. Now, being able to surpass a language barrier is very different from somebody who has a mental incapacity of grasping concepts and doesn't know what to ask for if he has the ability to ask for something. Additionally, in YOW, the petitioner also complained about some generalized mental incapacities, but he didn't have, he didn't have the expert, the expert declarations to support him. We've had numerous expert examinations. We've established through, again, uncontested expert evidence that Mr. Jones is not only, does not grasp, but he's actually incapable of grasping. Roberts. I see you're out of time. Let's just bail or ditch Bill. Thank you. Ms. Tong, thank you. Mr. Vianna? Mr. Vianna, thank you. Thank you, too. The case just argued is submitted. Good morning.
judges: Bell, Silverman, Bea